UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

NAVAL LOGISTIC, INC. d/b/a
MIDDLE POINT MARINA,

    Plaintiff

v.

M/V STAMOS BIEN, *in rem*,
CARMEN GALLARDO, *in personam*,
and ALFRED NUÑEZ, *in personam,*

    Defendant.

_____/

## **VERIFIED COMPLAINT**

    Plaintiff, Naval Logistic, Inc. d/b/a Middle Point Marina ("MPM"), by and through undersigned counsel, sues Defendants, M/V Stamos Bien ("Vessel"), *in rem*, and Carmen Gallardo, *in personam,* and alleges as follows:

    1.    The Court has jurisdiction over this cause pursuant to the provisions of Section 1333 of Title 28, United States Code. This is an admiralty and maritime claim within the meaning of Rule 9(h). This is an action to enforce a maritime claim within the meaning of Rule 9(h). This is an action to enforce a maritime lien on a vessel which is authorized by 46 USC Section 31342(a)(2) and is brought pursuant to Rule C(1)(b) of the Supplement Rules for Admiralty and Maritime Claims.

    2.    At all times material hereto, Plaintiff, MPM, was and still is a Florida corporation which operates a shipyard located at 3601 NW South River Drive, Miami, Florida.

3. Defendant, M/V Stamos Bien, is a 102-foot motor vessel manufactured by Maiora (the "Vessel") .

4. According to the Shipyard Agreement completed by the owner's representative, Alfred Nunez, the Vessel was owned by Defendant, Carmen Gallardo. Ms. Gallardo's address is 6485 SW 120th Ave, Miami, FL 33183. Alfred Nuñez, currently lives at 4320 SW 107th Ave, Miami, FL 33165.

5. The Vessel is offered for charter at Bayside Marketplace, Miami, Florida through Xanadu Charters at https://xanaducharters.com/yacht/yacht-stamos-bien-lg.[1]

6. The Vessel is currently located within this district and within the jurisdiction of the Court. The Vessel, upon information and belief, is docked at Bayside Marina, 401 Biscayne Blvd, Miami, Florida 33132.

7. On or about February 4, 2021, Defendant, Alfred Nuñez, on behalf of the owner and the Vessel, entered into a Shipyard Agreement with MPM for modification of the Vessel and the installation of the crane, among other repairs and services. A copy of the Shipyard Agreement is attached hereto as [Exhibit "A"].

8. An estimate for $19,500 was given for the installation of the crane, which did not include any unforeseen modifications required to install the crane, or mandatory environmental fees and tax. Defendants supplied their own crane to MPM.

9. Defendant agreed to have MPM perform the work and MPM undertook to perform these installation, repair, and modification services pursuant to the Shipyard Agreement and estimate.

---

[1] A search at sunbiz.org does not reveal the registration of the fictitious name Xanadu Charters. The website mentions Xanadu Charters Company however there is no such entity listed anywhere on sunbiz.org. There is an entity known as Xanadu Luxury Charter, LLC which lists the Defendant, Carmen Gallardo as the Manager but there is no mention of Xanadu Luxury Charter, LLC on the xanaducharter.com website.

10. On February 23, 2021, the Vessel was brought by Alfred Nuñez to MPM for MPM to perform the above-mentioned services.

11. In order to perform the services under the Shipyard Agreement, MPM had to rent special equipment.

12. Defendants, at several different times during MPM's installation of the crane, came to pick up the vessel to use on charters, interrupting the installation. During these periods, Defendants failed to return the Vessel for MPM to complete the work.

13. During the course of the work installing the crane, previously unknown and undetectable compatibility issues became apparent during the course of MPM's installation due to the size and condition of the crane, its suitability for the Vessel, and the condition of the Vessel itself. MPM performed additional work to ensure proper installation of the crane. As such, the final amount billed to Defendants was $31,961.15. A copy of the final invoice is attached as [Exhibit "B"].

14. Defendants were responsible for certain electrical work for the operation of the crane, including connecting the crane to a power source. It was necessary for the electrical work to be completed so that the crane would be rotated to allow MPM to complete the installation of the last several mounting screws.

15. On May 21, 2021, Defendants picked up the Vessel from MPM in order to operate a charter, promising to return it following the weekend for MPM's work to be completed. Defendants failed to return the Vessel for MPM to perform the final step of the crane installation, which included tightening certain remaining mounting screws.

16. The unpaid balance that remains due and owing to MPM with regard to the Vessel as of the date of the filing of this Complaint is $21,071.15. [2] *See* Exhibit B.

17. To date, only $9,750.00 has been paid for these services. A copy of the February 22, 2021, check is attached as [Exhibit "C"].

## COUNT I
## BREACH OF CONTRACT

Plaintiff re-alleges and incorporates herein paragraphs 1 through 17 above, as if fully stated herein and further alleges:

18. The Parties entered into a valid contract whereby MPM would install a crane on the Vessel in exchange for payment in the sum of $31,961.15.

19. Defendants breached the contract by failing to pay for the services rendered to the Vessel.

20. The unpaid balance that remains due and owing to MPM with regard to the Vessel as of the date of the filing of this Complaint is $21,071.15. *See* Exhibit B.

21. As a direct and proximate result of Defendants failure to pay the outstanding charges, Plaintiff, MPM, has sustained damages of $21,071.15 plus attorney's fees.

WHEREFORE, Plaintiff requests the Court enter judgment against Defendants, Carmen Gallardo, and Alfred Nuñez, *in personam*, and against Defendant M/V Stamos Bien, *in rem* for the full amount of Plaintiff's damages, plus pre-judgment interest, attorney's fees and costs.

## COUNT II
## MARITIME LIEN FOR NECESSARIES

---

[2] The damages sought does not include charges for the final task of installing the remaining bolts which MPM was unable to perform due to Defendants' breach.

Plaintiff, MPM, re-alleges and incorporates herein paragraphs 1 through 17, above, as if fully stated herein and further alleges.

22. The installation of a crane aboard a Vessel creates a valid maritime lien for necessaries against the vessel. *See Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 870 (11th Cir. 2010) ("Maritime liens allow injured parties, such as unpaid repairers or suppliers, to obtain redress ... without seeking compensation abroad from the vessel's owner…"); *see also Am. Marine Tech., Inc. v. M/Y Alchemist*, 19-60636-CIV, 2021 WL 1651292, at *6 (S.D. Fla. Mar. 16, 2021) (The term [necessaries] has been liberally construed to include 'what is reasonably needed in the ship's business,' such as 'goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function.); *Phoenix Marine Enterprises, Inc. v. One (1) Hylas 46' Convertible Sportfisherman Hull #1*, 87-0359-CIV-NESBITT, 1987 WL 33820, at *6 (S.D. Fla. Apr. 16, 1987)("The term 'other necessaries' as used in the Federal Maritime Lien Act is of great significance because it has been given broad meaning to include maritime services of all types.")

23. MPM has a valid maritime lien against the Vessel for the provision of labor and supplies for installation of the crane.

24. The Vessel and its owner(s) have failed and/or refused to pay the outstanding charges owed to MPM and MPM has a direct cause of action against the Vessel, *in rem*.

25. MPM requests that this Honorable Court issue a warrant for arrest *in rem* allowing the United States Marshal to arrest the Vessel. If MPM's maritime lien is not paid in a timely fashion, MPM requests this Honorable Court to direct the United States Marshal to sell the Vessel at the Marshal's auction to satisfy the maritime lien.

WHEREFORE, Plaintiff, MPM, respectfully requests the following:

A. A warrant for arrest issue against the M/V Stamos Bien, her engines, boilers, tackle, equipment, furniture, apparel, etc., and that any person, firm or corporation claiming any interest in said vessel may be cited to appear and answer this Complaint; and

B. The Court direct that notice of commencement of this suit shall be given by Plaintiff to the owner of the M/V Stamos Bien and any other persons, firms or corporations having any interest herein or having filed any mortgages or notices of lien against the Vessel;

C. That Plaintiff have a judgment entered in its favor for the amounts owed, plus pre-judgment interest, attorney's fees and taxable costs of this action; and

D. Plaintiff be awarded such other and further relied as the Court deems just and proper.

Signed this  24  day of August, 2021.

Respectfully submitted,

**FOREMAN FRIEDMAN, PA**

BY:*/s/ Zachary L. Foreman*
Zachary L. Foreman, Esq.
Florida Bar No. 1017993
zforeman@fflegal.com
Jeffrey E. Foreman, Esq.
Florida Bar No. 0240310
jforeman@fflegal.com
One Biscayne Tower
2 South Biscayne Boulevard -Suite 2300
Miami, FL 33131
Tel: 305-358-6555 / Fax: 305-374-9077

## VERIFICATION

STATE OF FLORIDA)
                          SS)
COUNTY OF MIAMI)

      BEFORE ME, the undersigned authority, personally appeared EDUARD CASTILLO, who, being first duly sworn according to law, deposes and says that he is the _____, has read the Complaint, and as to the facts stated to be true, they are true, and as to the facts stated on information and belief, he is informed that that they are true.

                                                                       Eduard Castillo

      SWORN TO and SUBSCRIBED TO before me on this 23 day of August, 2021.
Individual personally known _____ OR Individual produced identification __X__
Type and number of identification(s) produced __FL DL_____.

                                                            NOTARY PUBLIC

My Commission Expires:

JOSE VIJIL
Notary Public - State of Florida
Commission # GG 934755
My Comm. Expires Nov 25, 2023
Bonded through National Notary Assn.